**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHLEEN F. WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-05107 |
| | ) | |
| MENARD, INC., a Wisconsin corporation, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiff, Ms. Kathleen Ward, sued Menard, Inc. ("Menards") for negligence following an accident in which she tripped and fell on an uneven sidewalk at its Elgin, Illinois store. Menards has filed a motion for summary judgment, arguing (in a variety of ways) that, as a matter of law, the deviation was not unreasonably dangerous. For the reasons discussed below, the Court agrees and Menards' motion for summary judgment is granted.

## BACKGROUND

On the beautiful afternoon of May 29, 2017, Ms. Kathleen Ward and her husband, James Ward, drove to a Menards in Elgin, Illinois to shop for patio furniture. Def.'s Statement of Material Facts ("SMF") ¶¶ 10-11, ECF No. 59. After dropping his wife off at the store's entrance, Mr. Ward parked in the southernmost area of the parking lot, well distanced from the other cars. *Id.* ¶¶ 12-14. Mr. Ward was driving a recently purchased car and did not want to park it near the others by the entrance. *Id.* ¶ 13. According to Assistant General Manager Kyle Lojewski, he had never seen a customer park in that area of the lot before. *Id.* ¶ 45.

The couple left Menards without making a purchase and were empty-handed as they exited through the garden center and walked to their car via a sidewalk. *Id.* ¶¶ 15, 18. Roughly 100-150 feet away from the garden center, Mrs. Ward tripped on the sidewalk and fell. Pl.'s SMF ¶¶ 1, 15,

ECF No. 64. Her husband immediately called 911 as he recognized that his wife needed emergency assistance. *Id.* ¶ 7. When Menards employees arrived at the scene, Mr. Ward told them his wife had tripped on the sidewalk. Def.'s SMF ¶¶ 24, 26; Pl.'s SMF ¶ 11. Mr. Ward did not see Mrs. Ward fall, however. *Id.* ¶ 22. Neither Mrs. Ward nor her husband noticed the deviation before her fall. *Id.* ¶ 23.

Menards admits that Mrs. Ward's fall "was due to a sidewalk slab deviation." Def.'s Resp. to Pl.'s SMF ¶ 1, ECF No. 66. It is undisputed that there was a deviation in height between two adjacent squares of the sidewalk where Mrs. Ward fell, but the parties dispute the size of the deviation. On June 20, 2017, a little less than a month after the incident, Ward's private investigator took photographs of the sidewalk, using quarters to measure the height of the deviation. *Id.* ¶¶ 28, 30. The parties agree that the photographs accurately depict the sidewalk at the time of the incident. *Id.* ¶ 29; Pl.'s SMF ¶ 35. The exact number of stacked quarters is unclear from the photographs, but Menards claims (accurately) that they number seven at most. Def.'s Ex. D, ECF No. 59-4; Def.'s SMF ¶ 31. A height of seven quarters would put the deviation at 0.4822 inches.[1] Notwithstanding the report of Mrs. Ward's investigator, however, Mrs. Ward refers to the displacement as an "approximately one-inch deviation." Pl.'s Resp. to Mot. for Summ. J. ("MSJ") at 4, ECF No. 62. Ward also provides a photograph of the deviation with a tape measure that appears to register the height as one inch or a bit less. Pl.'s Ex. B, ECF No. 62-3. The photograph is taken from an elevated angle, however, so the marking on the measuring tape necessarily

---

[1] The plaintiff does not dispute the defendant's arithmetic and the Court will take judicial notice that the height of a newly minted quarter is 1.75 millimeters. *See Coin Specifications*, U.S. MINT (Sept. 24, 2019), https://www.usmint.gov/learn/coin-and-medal-programs/coin-specifications (last visited Dec. 14, 2020). There are 25.4 millimeters in an inch; the calculation is therefore: 7 times 1.75 mm equals 12.25 mm, divided by 25.4 mm/inch, equals 0.4822 inches.

overstates the actual size of the deviation to some degree. Accordingly, the evidence establishes that the deviation between the height of the two sidewalks was between one-half and one inch.

Menards engages a third-party vendor to audit and repair defects in the parking lot and sidewalks at its Elgin location at least once per year. Def.'s SMF ¶ 37. The vendor conducted an audit ten months and three months prior to the May 2017 incident. *Id.* ¶¶ 38, 39. Neither audit identified the sidewalk where Mrs. Ward fell as in need of repair. *Id.* Additionally, the store's General Manager and Assistant General Managers conduct a visual inspection of the store and its sidewalks between nine to twelve times a week altogether. *Id.* ¶¶ 51-52. If an employee identifies a defect, he or she contacts a third-party vendor to assess and repair it, if needed. *Id.* ¶ 66. In none of these inspections did any employee identify the deviation at issue. *Id.* ¶ 54. Menards is not aware of any injuries on the sidewalks at its Elgin location within the past five years. *Id.* ¶ 36.

Mrs. Ward filed suit against Menards in the Circuit Court of Kane County on June 21, 2018, which Menards then removed to this Court. Notice of Removal ¶¶ 1-2, ECF No. 1. Jurisdiction is proper because Menards is incorporated under the laws of Wisconsin and operates its principal place of business there, while Ms. Ward is an Illinois citizen and seeks more than $75,000 in damages. *Id.* ¶¶ 7-9. After discovery was completed, Menards moved for summary judgment. ECF No. 57.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (internal quotation omitted). In reviewing a motion for summary judgment, the Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all

3

reasonable inferences from that evidence in favor of the party opposing summary judgment." *Feliberty v. Kemper Corp.*, 98 F.3d 274, 276-77 (7th Cir. 1996).

To prevail on a negligence claim under Illinois law,[2] "a party must demonstrate that the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury proximately caused by the defendant's breach." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). Ward alleges that Menards owed a duty to its invitees, including herself, to maintain its premises in a reasonably safe condition. By failing to maintain the sidewalk at issue, Ward contends Menards breached that duty. Menards counters with four nominally different grounds, arguing that: the sidewalk deviation did not present an unreasonable risk of harm; the deviation was *de minimis* as a matter of law; Menards did not have notice that the deviation posed an unreasonable risk of harm; and Menards had no duty to maintain its sidewalks in perfect condition. In fact, however, each of these purportedly "independent" grounds for summary judgment derive from the question of whether the deviation in height between the two sidewalk slabs presented an unreasonable risk of harm to Mrs. Ward as she walked back to her car. The *de minimis* doctrine simply describes circumstances when a sidewalk deviation will not be considered to present an unreasonable risk of harm; the question of notice, as framed by Menards, turns on whether Menards knew or had reason to know that the deviation presented an unreasonable risk of harm; and no one disputes that Menards had no duty to maintain its sidewalks in "perfect" condition—the question is whether Menards breached its duty to maintain the sidewalk where Mrs. Ward tripped in a less-than-perfect-but-reasonably-safe condition.

---

[2] Both parties appear to agree that Illinois law provides the substantive law applicable in action, though neither discusses the question expressly.

Surprisingly, however, Mrs. Ward does not directly tackle the question of whether the sidewalk deviation presented an unreasonable danger. Rather, she argues that the *de minimis* rule does not apply here and so the question of the whether the sidewalk deviation was unreasonably dangerous must go to the jury. That approach is correct under state law, she maintains, because summary judgment is proper where a plaintiff does not provide evidence of an aggravating circumstance, but evidence of the existence of an aggravating circumstance precludes summary judgment because whether the defendant owes a duty to the plaintiff is deemed a factual question for the jury. *St. Martin v. First Hospitality Group, Inc.*, 2014 IL App (2d) 130505, ¶ 15, 9 N.E.3d 1221, 1226.

Whatever its merit as an assessment of state law, Mrs. Ward's contention that to get to a jury she need only demonstrate that the *de minimis* rule does not apply is not correct as a matter of federal law—and it is federal law that governs the allocation of responsibilities between judges and juries. *Fidelity & Deposit Co. of Maryland v. Rotec Indus.*, 392 F.3d 944, 949 (7th Cir. 2004). Under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), while state law supplies the substantive law in diversity cases, federal law governs procedure, even where the difference in procedure may be outcome determinative. *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 333 (7th Cir. 1994). And summary judgment is one such situation. "Summary judgment is granted in diversity cases when the non-moving party lacks enough evidence to sustain a jury verdict according to the federal standard: whether reasonable minds could deem the evidence adequate under the governing substantive rule." *Id.* at 334. "*Erie* does not require a federal court to employ the state's rules on the allocation of issues between judge and jury. . . . Federal courts may grant summary judgment under Rule 56 on concluding that no reasonable jury could return a verdict for the party opposing the motion, even if the state would require the judge to submit an identical case to the jury."

*McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990). So, even if the *de minimis* rule does not apply here (but as set forth further below, it does), that would not mean that Mrs. Ward's claim automatically goes to a jury; she would still be required to present evidence in response to the motion on which a reasonable jury could conclude that the sidewalk deviation where she tripped was unreasonably dangerous and Menards was therefore negligent in failing to repair it.

Arguably, Mrs. Ward has failed to do so because, as noted, she makes no affirmative argument that the deviation was unreasonably dangerous. Instead, she focuses on establishing that "aggravating factors" exist and render application of the *de minimis* rule inappropriate. But in the context of that argument, Mrs. Ward does cite to record evidence concerning the size of the deviation and explains why it was unreasonably dangerous in the context of her argument that there are aggravating factors that make the deviation more significant than the mere height of the displacement between sidewalk slabs would suggest. That is essentially an argument that the defect was unreasonably dangerous, so the Court will not deem such an argument waived. This accommodation, however, does nothing for the viability of Mrs. Ward's claim, because she has failed to establish the existence of any "aggravating factors" that would take this case outside the scope of the *de minimis* rule. Summary judgment based on that rule is therefore warranted.

Menards' principal argument is that it did not owe Ward a duty regarding the sidewalk because the defect was *de minimis*. And under Illinois law, "*de minimis* or slight defects frequently found in traversed areas are not actionable, as a matter of law." *Gillock v. City of Springfield*, 268 Ill. App. 3d 455, 457, 644 N.E.2d 831, 834 (1994). Originally applied to municipalities and later expanded to private businesses, the "*de minimis*" rule is premised on the idea that it would be unreasonable to expect proprietors to keep their sidewalks in constant perfect condition. *St. Martin*, 2014 IL App (2d) 130505, ¶ 13, 9 N.E.3d at 1225. Put differently, "although a municipality has a

duty to keep its property in a reasonably safe condition, it has no duty to repair *de minimis* defects in its sidewalks." *Id.*

The question thus becomes—what distinguishes a *de minimis* deviation between the height of sidewalk slabs from an actionable one? While there is no bright line rule, Illinois courts have established that a sidewalk deviation less than two inches in height is *de minimis*, absent aggravating factors. *Id.*; *Fulton v. Kroger Ltd. P'ship I*, 2016 IL App (4th) 160234-U, ¶ 15; *Gillock*, 268 Ill. App. 3d at 456-57, 644 N.E.2d at 834. Though the precise height of the deviation in this case is disputed at a half-inch versus an inch, both parties agree that it is less than two inches. By height alone, this deviation would therefore easily qualify as *de minimis*.

Mrs. Ward argues, however, that several aggravating circumstances weigh against finding the deviation *de minimis*. Namely, Mrs. Ward alleges that the sidewalk's slope, its location, the distractions that accompany shopping, and the surrounding commercial area constitute aggravating factors. Of these factors, she characterizes slope as the most significant. Pl.'s Resp. at 3, ECF No. 62. Ward cites the sidewalk's downward slope as a condition that exacerbated its danger. Ward testified: "The sidewalk was starting to go downhill, which I think is part of the reason I couldn't stop myself from falling, because I was on a downhill slant." Def.'s Ex. A at 108:20-23, ECF No. 59-1. According to Ward, a downhill slope triggers other aggravating factors, including changes in a person's gait, inaccurate depth perception, and an increased focus on walking slower. Ward also provides a photograph that purportedly depicts the sidewalk's incline. Pl.'s Ex. A, ECF No. 62-2.

Mrs. Ward cites just one case—*Bledsoe v. Dredge*, 288 Ill. App. 3d 1021, 1024, 681 N.E. 2d 96, 98 (1997)—in support of her argument about the aggravating nature of a slope and it is readily distinguishable. There, the deviation at issue was a cracked marble floor slab located in an

enclosed entryway. While the court noted that the flooring's slope created a "potentially added danger," it was its enclosed location that took it outside the scope of the *de minimis* rule. *Id.* *See also St. Martin*, 2014 IL App (2d) 130505, ¶ 22, 9 N.E.3d at 1227-28 (finding *Bledsoe* distinguishable because of the sheltered location and marble floor). Indeed, sidewalks are commonly constructed with a slight slope to allow for water drainage and to permit safe access for handicapped individuals. *See, e.g.*, *Burns v. City of Chicago*, 2016 IL App (1st) 151925, ¶ 24, 59 N.E.3d 846, 852; *Davis v. City of Chicago*, 8 Ill. App. 3d 94, 98, 289 N.E. 2d 250, 253 (1972). Those modest slopes do not render them unreasonably dangerous and Illinois courts have rejected claims that such slopes render the *de minimis* rule inapplicable to otherwise minor deviations between sidewalk slabs. Courts have similarly rejected claims that sloped surfaces exacerbated the dangers of other conditions that, standing alone, are (like the *de minimis* rule) inadequate as a matter of law to sustain a premises liability negligence claim. In negligence cases involving ice- and snow-covered sidewalks, for example, Illinois courts hold that natural accumulations are non-actionable and "the mere existence of a slope in the lot is not enough to defeat a motion for summary judgment." *Rose v. U.S.*, 929 F. Supp. 305, 309 (N.D. Ill. 1996) (quoting *Crane v. Triangle Plaza, Inc.*, 228 Ill. App. 3d 325, 331, 591 N.E. 2d 936, 941 (1992)). Similarly, in *Domkiene v. Menards, Inc.*, No. 15 C 5732, 2016 WL 4607888, at *3-4 (N.D. Ill. Sept. 6, 2016), the Court rejected an argument that slopes in the floor, sufficient to cause water to pool near the entrance of the store when raining, warranted an exception to the general rule that natural accumulations of water fail as a matter of law to support a finding of premises liability.

To demonstrate the dangerous nature of the slope, plaintiffs typically provide evidence in the form of expert testimony. *See McCann v. Bethesda Hosp.*, 80 Ill. App. 3d 544, 550, 400 N.E. 2d 16, 20 (1979) (relying on affidavit of licensed architect, who surveyed the parking lot in

question, to find the parking lot's incline excessive and therefore dangerous); *Davis*, 8 Ill. App. 3d at 96, 289 N.E. 2d at 251 (1972) (offering surveyor's testimony that sidewalk had a slope with a degree of 5.7); *White v. State*, 38 Ill. Ct. Cl. 1, 2 (1984) (relying on campus engineering specialist's testimony that slope was 1.5 feet in degree). And in the absence of expert testimony, some courts have concluded that the plaintiff failed as a matter of law to prove the slope unreasonably dangerous. *See Rose*, 929 F. Supp. at 309 (finding no evidence to support plaintiff's allegation of an unnatural accumulation of ice on the sidewalk where plaintiff provided no expert testimony about the slope); *Hosieth v. Northeast Illinois Regional Commuter R.R. Corp.*, 205 Ill. App. 3d 323, 328, 562 N.E.2d 602, 606 (1990) (negligence case involving sloped train platform; summary judgment for defendant affirmed where plaintiff offered no evidence or expert testimony on the train platform's incline and thus failed to establish that the slope was dangerous).

Here, Mrs. Ward has not provided any evidence that the slope of the sidewalk where she fell was unreasonably dangerous, or even that the slope was such that it increased the risk of tripping on the deviation between the sidewalk squares where she fell. She has not offered any evidence, much less expert testimony, to establish that the slope of the sidewalk contributed to her fall. The photograph that Ward provides (Pl.'s Ex. A, ECF No. 62-2) does virtually nothing in this regard; it remains unclear from the photograph what angle it was taken from, where the sidewalk deviation is located, and most significantly, it fails to clarify the degree of the sidewalk's gradient. Indeed, to the extent that the photo provides any information, it suggests that the slope of the sidewalk is quite modest and clearly insufficient to have rendered Mrs. Ward unable to stop herself from falling, as she claims. Without expert testimony or evidence to buttress her allegation that the sidewalk's slope exacerbated the risk posed by the deviation, Mrs. Ward has failed to demonstrate that the sidewalk's slope constitutes an aggravating circumstance.

Ward relies on *Harris v. Old Kent Bank*, 315 Ill. App. 3d 894, 735 N.E.2d 758 (2000), to allege two additional aggravating factors: the deviation's location on the sidewalk leading to the entrance and the distractions that accompany shopping. In *Harris*, the court held that a one-inch defect was not *de minimis* where the defect was located on a heavily traveled sidewalk that led to the bank's only entrance. 315 Ill. App. 3d at 897, 902, 735 N.E.2d at 761, 765. The *Harris* court also cited the distractions that accompany a bank visit, such as reviewing receipts, searching for car keys, or observing traffic, as a reason why the bank could have foreseen the deviation's risk to patrons.

Neither of these factors are present here. The sidewalk at issue provided access to one of the store's multiple entrances, not to the store's sole entrance. Unlike the plaintiff in *Harris*, Ward had a choice of the door she used to enter and exit Menard. *See St. Martin*, 2014 IL App (2d) 130505, ¶ 22, 9 N.E.3d at 1227 (distinguishing *Harris* because plaintiff did not argue "he lacked a choice of doors used to enter or exit" the building). And Mrs. Ward did not fall anywhere near the entrance; by her own account, she had taken some 100 steps after leaving the store before she fell (Def.'s SMF ¶ 20, citing Mrs. Ward's deposition testimony) and the photos in the record corroborate that the spot where she fell was not in the immediate area of the store's exit.

Moreover, for distractions to constitute an aggravating factor, the party must have been actually distracted at the time of the incident. *See Dunn*, 880 F.3d at 909 ("The distraction exception will only apply . . . where evidence exists from which a court can infer that plaintiff was actually distracted.") (internal quotations omitted); *Grossman v. Menard*, No. 17 C 2242, 2018 WL 4563071, at *3 (N.D. Ill. Sept. 24, 2018) (holding that property owners are not required to take preventative measures against commonplace distractions, like traffic). Ward has not provided any evidence from which a jury could reasonably conclude that she was distracted at the time of

her fall. She and her husband left Menards without purchasing anything, thus eliminating any receipt or item-based distractions. Ward has not claimed she was looking for her keys or at oncoming traffic before her fall. As a result, the aggravating circumstances of access to a sole entry and shopping distractions do not apply here.

Finally, Ward argues that Menard's commercial location and potentially high pedestrian traffic count constitutes an aggravating factor. Ward is correct in that courts are more likely to find defects to be *de minimis* in residential areas than in commercial ones because of their decreased pedestrian activity. *Baker v. City of Granite City*, 75 Ill. App. 3d 157, 160, 394 N.E. 2d 33, 35 (1979) (finding that a two-inch crack would not be actionable in a residential area, but may be in a busy commercial area); *Schnur v. Kohl's Dept. Stores, Inc.*, No. 06 C 3040, 2010 WL 4930687, at *7 (N.D. Ill. Nov. 29, 2010) (high pedestrian traffic in a commercial area can be an aggravating factor because "pedestrians may become easily distracted and must be particularly alert to avoid bumping into each other").

The problem is that Ward provides no evidence of a high pedestrian traffic count at the Elgin Menards, let alone in the vicinity of the sidewalk at issue. Ward does not claim that there were other pedestrians in the area where she fell and it is undisputed that the Wards were returning to their car which Mr. Ward had parked in a remote portion of the lot. Instead, Ward argues that it is reasonable to conclude that because there is an increased security presence at the Elgin location due to a higher traffic count, there is frequent pedestrian traffic on this particular sidewalk.[3] Not only does this conclusion demand an inferential leap, but it says nothing about the degree of pedestrian traffic at the spot where Mrs. Ward fell. As such, it fails to materially dispute the

---

[3] The increased security presence Ward refers to is two security officers. Def.'s Ex. J at 29:17-20, ECF No. 59-10. No security personnel were on duty the day of the incident. *Id.* at 29:21-23.

11

evidence adduced by Menards, which supports only the conclusion that there was not distracting pedestrian traffic on the sidewalk at that location. When asked whether he ever saw guests walk 100 to 150 feet due south of the garden exit, as Ward did, Lojewski responded, "I have never seen anybody go due south directly past those garden center—that garden center exit." Def.'s Ex. J at 155:2-17, ECF No. 59-10. General Manager Christopher Fisher also testified regarding the foot traffic in this location:

> Q: Is that a common, rare or otherwise how would you care to describe how frequently guests travel south of the garden center exit, staying on the sidewalk?
>
> A: Rare.
>
> Q: Why is it rare?
>
> A: Because those spaces are at the furthest most points of the parking lot, and typically guests like to be closer to the doors.
>
> Q: Having worked there for four years . . . how many times have you ever seen—can you count on one hand, two hands, fingers, hands and toes the number of times you've seen a guest walk as far south on the south walk close to the big wooden snow gate?
>
> A: Very few.

Def.'s Ex. K at 70:11-24, 71:1-3, ECF No. 59-11. Ward has not offered any testimony regarding high foot traffic at the Elgin location and indeed, Menards has presented testimony to the contrary. *See St. Martin*, 2014 IL App (2d) 130505, ¶ 19, 9 N.E. 3d at 1227 (commercial area was not an aggravating circumstance because plaintiff provided no evidence of heavy foot traffic). *See contra Thompson v. Menard, Inc.*, No. 16 C 6560, 2017 WL 4164196, at *5 (N.D. Ill. Sept. 20, 2017) (qualifying pedestrian traffic as an aggravating factor where store manager testified that Menards customers frequently used sidewalk in question). Accordingly, Menards' commercial location alone, without a showing of a high pedestrian count, is insufficient to finding an aggravating factor.

*       *       *

Because Mrs. Ward has failed to present evidence of an aggravating factor that materially exacerbated the danger posed by the sidewalk deviation where she fell, the Court concludes that, under Illinois law, the sidewalk deviation was *de minimis* and her negligence claim therefore fails as a matter of law. Alternatively stated, no reasonable jury could conclude that the combination of factors that Mrs. Ward has identified rendered the sidewalk where she fell unreasonably dangerous. Accordingly, summary judgment is granted in favor of Menards.[4] Final Judgment shall be entered.

Dated: December 16, 2020

John J. Tharp, Jr.
United States District Judge

---

[4] It is unnecessary to assess whether Menards had notice of the deviation. The undisputed evidence demonstrates that Menards knew of the condition of the sidewalk; it inspected its premises regularly. What Menards argues is that it had no notice that the condition rendered the sidewalk unreasonably dangerous. Since the Court has held that the sidewalk was not unreasonably dangerous as a matter of law, it would necessarily conclude that Menards had no notice of an unreasonably dangerous condition.